IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AVALON MEDICAL GROUP II, LLC,

    Plaintiff,

vs.                                                                 No. 12-CV-833 MCA/KBM

LPP MORTGAGE, LTD., and
CLMG CORPORATION,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Strike Plaintiff's Jury Demand and Memorandum in Support [Doc. 11] filed August 22, 2012 and Defendants' Motion to Strike Plaintiff's Jury Demand and Memorandum in Support [Doc. 25] filed September 25, 2012. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies both Motions without prejudice.

**I.**      **BACKGROUND**

In 2008, Plaintiff Avalon Medical Group II, LLC, took out a mortgage (the Mortgage) from Charter Bank to build a facility.[1] [Doc. 13, ¶¶ 9-10] After loaning money

---

[1] The only evidence on file at this early stage in the proceedings are the documents attached to Plaintiff's First Amended Complaint for Damages [Doc. 13-21], documents attached to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Damages [Doc. 24] and documents attached to Plaintiff's Response to Defendants' Motion to Dismiss First Amended Complaint for Damages and Memorandum in Support [Doc. 26]. All facts are taken from Plaintiff's First Amended Complaint for Damages, unless otherwise noted. Defendants dispute the facts related to LPP assuming the Mortgage, [Doc. 24, p. 3 fn.2] however, because of the early stage of the proceedings, Defendants have yet to provide contrary evidence. For purposes of this motion, the facts as stated in the First Amended Complaint for Damages will be taken as true.

1

to Plaintiff, Charter Bank was placed into receivership by the FDIC, and, eventually, by various assignments, Defendant LPP Mortgage, Ltd. (Defendant LPP) was assigned the Mortgage. [Doc. 13, ¶¶ 13-14] Defendant CLMG serviced the Mortgage on behalf of Defendant LPP.  [Doc. 13, ¶¶ 5-6] In November of 2011, Plaintiff and Defendant LPP entered into a Loan Modification Agreement, through which Plaintiff borrowed additional money from Defendant LPP for the purpose of renovations to the facility requested by the Veterans Administration so that the Veterans Administration could lease the available portion of the facility and so Plaintiff could then sell the facility to a buyer interested in the fully leased facility. [Doc. 13, ¶¶ 21-24]

> The Loan Modification Agreement contains an agreement to waive jury trial:
>
> BORROWER, GUARANTOR AND LENDER, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, HEREBY WAIVE TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING BROUGHT IN CONNECTION WITH THIS AGREEMENT, THE NOTE OR ANY OF THE OTHER LOAN DOCUMENTS, WHICH WAIVER IS INFORMED AND VOLUNTARY.

[Doc. 17, p. 6, ¶ 14] The waiver, on page 6 of the 9 page agreement, is in all caps, though most of the Loan Modification Agreement is in lower case. [Id.]  The waiver is the first sentence in a paragraph with one other sentence. [Id.]

Plaintiff has sued Defendants for various causes of action, including breach of contract, breach of the implied covenant of good faith and fair dealing, estoppel, breach of fiduciary duty, unfair practices, tortious interference with contract (against Defendant CLMG), and civil conspiracy.  [Doc. 14, pp. 6-13] Plaintiff has demanded a trial by jury.

[Doc. 1, p. 21; Doc. 14, p. 13] Defendants have responded with a Motion to Dismiss and have moved to strike Plaintiff's Jury Demand.[2] [Docs. 11, 25 (Motions to Strike Jury Demand); Doc. 24 (Motion to Dismiss Plaintiff's First Amended Complaint for Damages)]

Defendants argue that Plaintiff knowingly and voluntarily waived the right to jury trial through the above clear and unambiguous jury waiver in the Loan Modification Agreement. [Doc. 25, p. 4] Plaintiff responds that it only agreed to the jury waiver because of the "gross disparity in bargaining power" between it and LPP, that it has alleged this gross disparity in its complaint and that the court must accept those allegations as true, and thus "the Court simply does not have, and cannot at this stage of the litigation have, sufficient information before it to determine that Plaintiff has effectively waived its Seventh Amendment right to a jury trial." [Doc. 27, p. 1]

Referring to the First Amended Complaint, Plaintiff argues that it has alleged various facts supporting a gross disparity in bargaining power. [Doc. 27, p. 3] Plaintiff alleged that Defendants did not regularly give Plaintiff monthly statements regarding the amount due on the loan, which fluctuated, then Defendant CLMG advised Plaintiff that

---

[2] Defendants filed their first Motion to Strike Jury Demand on August 22, 2012, [Doc. 11] the same day they filed a Motion to Dismiss Plaintiff's Complaint. [Doc. 12] Plaintiff responded to the Motion to Dismiss by timely filing an Amended Complaint, which again contained a jury demand. [Doc. 14, p. 13] Thus, Defendants filed a second Motion to Strike the Jury Demand in the Amended Complaint. [Doc. 25] All of the arguments contained in the first Motion to Strike, plus additional arguments, are contained in the second Motion to Strike Jury Demand. [Docs. 11, 25] Thus, the Court generally refers to the Second Motion to Strike Jury Demand.
  Defendants also filed a Motion to Dismiss Plaintiff's First Amended Complaint. [Doc. 24] That Motion will be the subject of a separate Memorandum Opinion and Order.

the Loan was past due and demanded Plaintiff pay the loan in full or face foreclosure, but, thereafter decided to extend the maturity of the loan on an ad hoc, month-to-month basis. [Doc. 13, ¶¶ 15, 16, 19] Plaintiff alleged that it secured a lessee for the portion of the building that had not yet been leased, that the lessee required improvements, which required Plaintiff to take out an additional loan from Defendant LPP, and that the fully leased building was attractive to a buyer but the buyer insisted that the sale be final by a particular date. [Doc. 13, ¶¶ 21-24] Plaintiff alleged that, as a condition of the Loan Modification Agreement, LPP extracted a pledge by Plaintiff and related entities of $12 million of collateral on a $5 million obligation, and argues that "those allegations *scream* of unequal bargaining power between a sophisticated but financially distressed borrow[er] and an overbearing lender that held all the cards." [Doc. 13, ¶ 28, Doc. 27, p. 4] (Emphasis in original). Finally, Plaintiff has alleged that the Loan Modification Agreement "was drafted by the Defendants' transactional attorneys and its terms were presented to Plaintiff as non-negotiable, due to a gross disparity in bargaining power between Plaintiff and Defendant LPP, as holder of Plaintiff's distressed loan." [Doc. 13, ¶ 24]

## II. ANALYSIS

### A. Timeliness of Response Brief

Defendants argue that this Court should not consider Plaintiff's Response Brief, filed October 12, 2012, because it was filed more than 14 days after Defendants filed their Motion to Strike Jury Demand on September 25, 2012. [Doc. 30, p. 1] Plaintiff filed its

response using the Court's Electronic CM/ECF filing system, and counsel for both Plaintiff and Defendants are participants in the Court's CM/ECF program and thus have agreed to electronic service through CM/ECF.  Pursuant to Local Rule 5.1(a), "Electronic service . . . is the equivalent of service by mail in accordance with Fed R. Civ. P. 5(b)." D.N.M.LR-Civ 5.1(a).  Local Rule 7.4 provides that responses to motions must be filed within 14 days and that the "time periods are computed in accordance with Fed. R. Civ. P. 6(a) and (d)."  D.N.M.LR-Civ 7.4(a).  Federal Rule of Civil Procedure 6(d) explains the process for counting days when determining a deadline and provides that "3 days are added after the period would otherwise expire" when service is made pursuant to Federal Rule of Civil Procedure 5(b)(2)(C), which governs service by mail.  Thus, in addition to the 14 days to respond, Plaintiff had 3 additional days, extending Plaintiff's deadline to October 12, 2012.  Plaintiff timely filed its response brief.  Defendants' argument is without merit.

**B.     Waiver of Jury Trial**

The right to a jury trial in the federal courts, including in actions based on diversity jurisdiction, is governed by federal law.  *Simler v. Conner*, 372 U.S. 221, 221-22 (1963); *Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1115 (10th 2009).  "In Suits at common law . . . the right of trial by jury shall be preserved . . . ."  U.S. Const. amend. VII.  "[A]s the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver."  *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937).  However, "[a]greements waiving the right to trial by jury are neither illegal nor contrary to public policy."  *Telum,*

*Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988) (citing *McCarthy v. Wynne*, 126 F.2d 620, 623 (10th Cir. 1942)). "Those cases in which the validity of a contractual waiver of jury trial has been in issue have overwhelmingly applied the knowing and voluntary standard." *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 756 (6th Cir. 1985).

In determining whether the waiver was voluntary and knowing, courts consider factors such as "(1) whether there was a gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous." *Phoenix Leasing Inc. v. Sure Broad., Inc.*, 843 F.Supp. 1379, 1384 (D. Nev. Jan. 13, 1994) (internal quotation marks and citation omitted); *see also Tara Woods Ltd. v Fannie Mae*, 2010 WL 1529459, at *1 (D. Colo. April 1, 2010) (unpublished decision) (considering the above factors along with whether the party against whom waiver is sought was represented by counsel); *Boyd v. U.S. Bank Nat'l Ass'n*, 2007 WL 2822518, at *18 (D. Kan. Sept. 26, 2007) (unpublished decision). The Court, for ease of reference, will refer to these factors as the *Phoenix Leasing* factors.

The Tenth Circuit has recognized that courts have considered whether the jury waiver is written in inconspicuous, fine print or whether there is a gross disparity in bargaining power in determining whether a jury trial waiver was entered into knowingly and voluntarily, and thus enforceable. *Telum*, 859 F.2d at 837; *see also Bevill Co. v.*

6

*Sprint/United Mgm't Co.*, 304 Fed.Appx. 674, 682-83 (10th Cir. 2008) (unpublished decision). However, the Tenth Circuit has expressly avoided deciding which party has the burden of showing whether a contractual jury waiver was or was not knowing and voluntary. *Husley v. West,* 966 F.2d 579, 581-82 (10th Cir. 1992) (recognizing a circuit split but declining to address the question of which party has the burden to establish a valid waiver). Defendants strenuously oppose a determination that they have the burden to show that a jury waiver is voluntary and knowing. [Doc. 30, p. 2]

The district courts within the Tenth Circuit, including this Court, have generally applied the *Phoenix Leasing* factors and placed the burden of showing that the waiver was knowing and voluntary on the party seeking to enforce the waiver. *See, e.g., Hitachi Capital Am. Corp. v. Shiloh Imaging Ctr., LLC*, 2012 WL 876778, at *1 (W.D. Okla. March 14, 2012) (unpublished decision); *Pinstripe, Inc. v. Manpower, Inc.*, 2009 WL 1457704, at *2 (N.D. Okla. May 22, 2009) (unpublished decision); *Boyd*, 2007 WL 2822518, at *18 (D.Kan.); *PostNet Int'l Franchise Corp. v. Amercis Int'l, Inc.*, 2006 WL 1775599, at *1 (D. Colo. June 26, 2006) (unpublished decision) (endorsing a totality of the circumstances application of the factors); *Dreiling v. Peugeot Motors of Am., Inc.*, 539 F.Supp. 402, 403 (D. Colo. 1982); *Too Tall, Inc. v. Sara Lee Bakery Group, Inc.*, No. CIV 08-191, slip op. at 4-5 (D.N.M. Sept. 9, 2009); *Luckett v. Sotheby's, Inc.*, No CIV 98-1426, slip op. at 4-5 (D.N.M., Sept. 1, 1999). Persuaded by the reasoning in the above cases, the Court will apply the *Phoenix Leasing* factors. Additionally, because the presumption is against waiver of the right to jury trial, *Kennedy,* 301 U.S. at 393, the

7

Court agrees with the above authorities that the burden of proof in establishing a knowing and voluntary jury trial waiver is on the party seeking to enforce the waiver (here, Defendants).

Thus, the Court moves to a consideration of the *Phoenix Leasing* factors regarding whether a contractual waiver of the right to a jury trial was made knowingly and intelligently.

   1.   *Whether the Waiver was Inconspicuous*

Plaintiff does not dispute that it was clear and conspicuous. [Doc. 27, p. 3]  The Jury Waiver clause in this case was in all caps, in a paragraph with one other sentence, on page 6 of the 9 page Modified Loan Agreement (the last 3 pages are signature pages and an attachment with the property description of the Facility).  This factor weighs in favor of a finding that Plaintiff knowingly waived its right to a trial by jury.

   2.   *Plaintiff's Business or Professional Experience*

Plaintiff does not dispute that its principal had business and professional experience. [Doc. 27, p. 3]  This factor weighs in favor of determining that Plaintiff knowingly waived its right to a jury trial.

   3.   *Whether the Parties were Represented by Counsel*

It appears to be undisputed that Defendants' attorneys drafted the Loan Modification Agreement. [Doc. 27, p. 4, Doc. 30, p. 4] There is no evidence in the record regarding whether Plaintiff was represented by counsel during the negotiation of the Loan Modification Agreement.  However, this factor, like Plaintiff's business or professional

experience and the conspicuousness of the jury waiver, all pertain to whether Plaintiff knowingly waived its right to a jury trial. Plaintiff's concession that its principal was knowledgeable and experienced weighs in favor of a determination that the waiver was knowingly made, however, with the limited proffers made at this juncture, the Court is unable weigh this factor against other considerations relevant in determining the enforceability of the waiver under the totality of the circumstances.

    *4.    Whether there was a Gross Disparity in Bargaining Power*

"[A] disparity in bargaining power exists in most transactions between a commercial party and an individual, however, the relevant inquiry is whether this disparity was 'gross.'" *Boyd*, 2007 WL 2822518, at *19.

In *Phoenix Leasing,* the entity seeking to avoid enforcement of the jury waiver was a fledgling cable company, who took out a loan from Phoenix Leasing. *Phoenix Leasing*, 843 F.Supp. at 1382, 1385. The Court stated:

> [t]he ability to take out a loan to start up a profit making cable company is not a necessity of life such that Defendant was compelled to accept Plaintiff's loan on whatever terms it was offered. The evidence before us does not indicate Defendant was in any difficulty or under some form of duress. Defendant . . . could have simply declined the offered terms. Nothing compelled Defendant to accept the loan on these terms, they were perfectly free to reject the deal. This is not the kind of case that supports a 'necessitous men are not free men' approach. Nothing here calls on a court to rescue Defendant from a contract (or a contractual term) entered into knowingly and voluntarily.

*Phoenix Leasing,* 843 F.Supp. at 1385 (internal quotation marks and citation omitted).

Similarly, in *Boyd*, the Court concluded that "[i]n a commercial situation,

9

[showing a gross disparity] requires *more* than the one party in need of funds or the services provided by the other party." *Boyd*, 2007 WL 2822518, at *18. In *Boyd*, the court concluded that, though there appeared to be a disparity in bargaining power between the individual (seeking to avoid the jury waiver) and the lender, the disparity was not gross. *Id.* The individual had sought financing from other lenders and received a verbal commitment from another lender, but chose the defendant lender because it offered "favorable terms and interest rate." *Id.* Given that the individual had shopped around and made a reasonable choice between lenders, the Court declined to find a gross disparity and rather concluded that the individual could have declined the offer, including the jury waiver. *Id.*

Here, the parties thus far have not submitted any affidavits, depositions, or other documents with facts addressing the relative bargaining power of the parties. Plaintiff argues that the fact that it agreed to put up over $12,000,000 worth of collateral in exchange for a loan of approximately $5,000,000 establishes that it had grossly impaired bargaining power. [Doc. 27, p. 4; Doc. 18]. Defendants do not address this claim. [Doc. 30, pp. 3-4]

While there are allegations, there is no evidence in the record as to the other options Plaintiff had in obtaining financing, or what the practical consequences would be if Plaintiff did not enter into the Loan Modification Agreement. Given the allegations in this case, such evidence is necessary to consider whether Plaintiff suffered from such a gross disparity in bargaining power that its agreement to the jury waiver provision was

involuntary. Because the burden of proof is on the Defendants, and because Defendants have not provided evidence of the strength of Plaintiff's bargaining power, the Court finds that this factor weighs against Defendants.

> 5. *Whether Plaintiff had an Opportunity to Negotiate the Terms of the Contract*

Plaintiff claims, and Defendants do not dispute, that Defendant LPP presented the Loan Modification Agreement to Plaintiff on a take or leave it basis. [Doc. 27, p. 4; Doc. 30, p. 4] Even so, Defendants cite, among other cases, *Tara Woods Ltd.*, a loan case in which the borrower sought to avoid the jury waiver clause. *Tara Woods Ltd.,* 2010 WL 1529459, at *2. [Doc. 30, p. 5] The Court determined that the borrower had little opportunity to negotiate the terms of the standardized loan document. *Id.* However, the Court determined that the factor weighed neutrally because there was not evidence that the borrower or his counsel attempted to negotiate the terms, particularly the jury waiver, and because "[a] contract clause is not unenforceable merely because one party to the contract insists on it." *Id.* (internal quotation marks and citations omitted).

Plaintiff, on the other hand, cites *Dreiling*, in which the Court held that the party opposing the jury waiver did not agree to the jury waiver clause knowingly and voluntarily. *Dreiling*, 539 F.Supp. at 403. [Doc. 27, p. 3] The Court reasoned:

> Defendants have presented no evidence that the waiver provision was a bargained for term of the contract, was mentioned during negotiations, or was even brought to the plaintiffs' attention. In fact, the defendants have failed to show that the plaintiffs had any choice other than to accept the contract as written. The 1978 Agreement appears to be Peugeot's standardized printed dealer contract, drafted by Peugeot. Obviously, the plaintiffs had little, if any, opportunity to negotiate the

provisions.

*Id.*

What steps, if any, Plaintiff took to negotiate any provision of the Loan Modification Agreement, including the jury waiver provision, and Defendant LPP accepted or rejected, are not in the record. Again, such evidence is important to the Court in deciding whether this factor weighs for or against a voluntary waiver of the right to a jury trial. Given Defendants' concession that the Loan Modification Agreement was presented on a take it or leave it basis, this factor weighs against a finding of voluntary waiver.

   6.   *Summary*

Here, the parties do not dispute that the jury waiver clause of the Loan Modification Agreement was clear and conspicuous, and that Plaintiff's principal was experienced and sophisticated.

What Plaintiff strenuously opposes is a finding that it agreed to waive its right to a jury trial voluntarily. The Court has determined that the evidence before it is insufficient to determine whether Plaintiff suffered from a gross disparity of bargaining power. The Court has further determined that Plaintiff did not have an opportunity to negotiate the terms of the Loan Modification Agreement. Given the lack of factual development of the relative bargaining power of the parties, this Court cannot yet determine whether Plaintiff made a tough and unfavorable, but voluntary decision to waive its right to a jury trial which it now regrets, or whether Plaintiff was facing such dire consequences if it refused

provisions.

*Id.*

What steps, if any, Plaintiff took to negotiate any provision of the Loan Modification Agreement, including the jury waiver provision, and Defendant LPP accepted or rejected, are not in the record. Again, such evidence is important to the Court in deciding whether this factor weighs for or against a voluntary waiver of the right to a jury trial. Given Defendants' concession that the Loan Modification Agreement was presented on a take it or leave it basis, this factor weighs against a finding of voluntary waiver.

   6.   *Summary*

Here, the parties do not dispute that the jury waiver clause of the Loan Modification Agreement was clear and conspicuous, and that Plaintiff's principal was experienced and sophisticated.

What Plaintiff strenuously opposes is a finding that it agreed to waive its right to a jury trial voluntarily. The Court has determined that the evidence before it is insufficient to determine whether Plaintiff suffered from a gross disparity of bargaining power. The Court has further determined that Plaintiff did not have an opportunity to negotiate the terms of the Loan Modification Agreement. Given the lack of factual development of the relative bargaining power of the parties, this Court cannot yet determine whether Plaintiff made a tough and unfavorable, but voluntary decision to waive its right to a jury trial which it now regrets, or whether Plaintiff was facing such dire consequences if it refused

the as-is Loan Modification Agreement that this Court should determine that Plaintiff, though knowingly, involuntarily agreed to waive its right to a jury trial. Because Defendants have the burden of establishing that Plaintiff both knowingly and voluntarily agreed to waive its right to a jury trial, the Court cannot conclude that Defendants have met their burden.[3] The Court, thus, denies Defendants' Motions to Strike the Jury Demand, however, the Court denies the motions without prejudice, such that Defendants may renew their motion no later than the dispositive motion deadline, and attach pertinent evidence or request an evidentiary hearing.

**CONCLUSION**

Defendants have not met their burden of establishing that Plaintiff waived its right to a jury trial.

**IT IS THEREFORE HEREBY ORDERED** that Defendants' Motion to Strike Plaintiff's Jury Demand and Memorandum in Support [Doc. 11] filed August 22, 2012 is hereby denied without prejudice.

**IT IS FURTHER THEREFORE HEREBY ORDERED** that Defendants' Motion to Strike Plaintiff's Jury Demand and Memorandum in Support [Doc. 25] filed September 25, 2012 is hereby denied without prejudice.

Defendants are granted leave to file a Renewed Motion to Strike Plaintiff's Jury

---

[3] Given the Court's decision to deny the Motion to Enforce the Jury Waiver, the Court need not address Plaintiff's additional arguments that, if the waiver is effective, it is limited to certain claims and also that it is not effective as to Plaintiff's claims against Defendant CLMG because CLMG did not sign the Loan Modification Agreement.

Demand attaching evidence no later than the dispositive motion deadline set by the Court in this matter.

**SO ORDERED** this 30th day of March, 2013.

_____
HONORABLE M. CHRISTINA ARMIJO
*Chief United States District Court Judge*