IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AVALON MEDICAL GROUP II, LLC,

      Plaintiff,

v.                            No. 12-CV-0833 MCA/KBM

LPP MORTGAGE, LTD., and
CLMG CORPORATION,

      Defendants.

## MEMORANDUM AND OPINION ORDER

**THIS MATTER** is before the Court on *Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Damages and Memorandum in Support* [Doc. 24]. Having considered the submissions,[1] the relevant case law, and otherwise being fully advised in the premises, the Court **GRANTS** the motion in-part and **DENIES** the motion in-part.

## I.    BACKGROUND

---

[1] After Defendants filed *Defendants' Motion to Dismiss Plaintiff's First Amended Complaint for Damages and Memorandum in Support*, the Court *sua sponte* ordered Plaintiff to file an Amended Complaint sufficiently alleging the citizenship of all parties in order for the Court to determine whether it had subject matter jurisdiction over this matter. [Doc. 35, p. 2] In response, Plaintiff filed the *Second Amended Complaint for Damages* which amended Plaintiff's allegations pertaining to the citizenship of the parties and made no other changes. [Doc. 36] The Court expressly stated that Defendants would not be required to resubmit their *Motion to Dismiss* under these circumstances [Doc. 35, p.2], and thus the Court hereby construes *Defendants' Motion to Dismiss the First Amended Complaint* [Doc. 24] to be a Motion to Dismiss the now operative *Second Amended Complaint*. [Doc. 36]

Plaintiff Avalon Medical Group II, LLC, is a New Mexico limited liability company which constructed a medical office building in 2008.[2] [*Second Amended Complaint for Damages*, Doc. 36, ¶¶ 1, 9, 10]   Plaintiff financed the construction by taking out a loan for $3.6 million from Charter Bank, as set out in a Construction Loan Agreement (CLA). [Doc. 36, ¶ 9] Subsequently, Charter Bank was placed into receivership, and, through various assignments, Defendant LPP Mortgage, Ltd., was assigned Charter Bank's interest in the Loan. [Doc. 36, ¶¶ 13, 14] Defendant CLMG serviced the loan for Defendant LPP. [Doc. 36, ¶¶ 4-6, 16]

Plaintiff leased out half of the building in early 2009, however, Plaintiff did not manage to negotiate a lease for the other half of the building until late 2010. [Doc. 36, ¶¶ 12, 21, Doc. 36-1, p.1]   The lease, to the Veterans Administration (VA), required Plaintiff to construct significant tenant improvements. [Doc. 36, ¶ 24] While the VA would reimburse Plaintiff for ninety percent of the cost of the improvements, Plaintiff was required to initially finance the cost of the improvements. [Doc. 36, ¶ 21]

Meanwhile, in 2010, CLMG notified Plaintiff that Plaintiff was past due on the Loan and demanded payment in full or Plaintiff would face foreclosure. [Doc. 36, ¶ 16] The interest rate on the Loan fluctuated monthly and LPP would add loan costs to the principal.   [Doc. 36, ¶ 18]   However, Plaintiff was not receiving monthly loan

---

[2] In considering a motion to dismiss, such as the one before the Court, the Court must take all well-pleaded factual allegations as true, which the Court has done.   *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006).

2

statements, and thus had no way of knowing how much to pay in any given month.   [Doc. 36, ¶ 18] After a meeting between CLMG's servicing agent and Plaintiff's managing member, CLMG and Plaintiff agreed that "CLMG would facilitate Plaintiff's efforts to lease the remainder of the building and that LPP would continue to accept monthly interest-only payments on the Loan." [Doc. 36, ¶ 18] CLMG also agreed that Defendants would notify Plaintiff monthly of the amount of each upcoming monthly payment. [Doc. 36, ¶ 18]

In August of 2011, Plaintiff entered into a Sales Contract with Henry P. and Marina C. Wright for the purchase of the property. [Doc. 36, ¶ 22]   The buyers insisted on closing by January 13, 2012 so they could benefit from tax provisions for a "like-kind" or "1031" exchange. [Doc. 36, ¶ 22] The Sales Contract contained a provision allowing the buyers to "assign this Agreement to the limited liability company in which Buyers are the sole members and managers and/or a qualified intermediary in conjunction with a Section 1031 Exchange."   [Doc. 36, ¶ 53; Doc. 36-2, p. 1, ¶ 26]

On November 15, 2011, Plaintiff and LPP entered into a Loan Modification Agreement (LMA). [Doc. 36, ¶ 24] The LMA provided financing to Plaintiff of up to $1,294,322 for construction of the tenant improvements required by the VA Lease. [Doc. 36, ¶ 24] In exchange, Plaintiff agreed to a "fee of $15,811.00 for LPP's consent to the loan modification, together with . . . attorneys fees[.]" [Doc. 36, ¶ 25] The LMA required Plaintiff to "grant LPP collateral exceeding $12 million to secure the loan[,]" though the principal amount of the Loan was estimated to be $5,086,308. [Doc. 36, ¶ 28] Among

3

other collateral, Plaintiff pledged "a collateral assignment of the sales contract between Borrower, as seller, and Henry P. Wright and Marina C. Wright, as purchaser." [Doc. 36-3, p. 3, ¶ 3]

Per the LMA, Plaintiff was required to submit all requests for funding to Defendant LPP, and Defendant LPP agreed that within ten days of receiving the funding request it would have its third party construction monitor inspect the work. [Doc. 36-3, p. 4, ¶ 4] LPP agreed to fund the draw request after review of the third party construction monitor's report. [Id.]

The LMA contains a release provision which states:

> BORROWER AND GUARANTOR . . . HEREBY FULLY, FINALLY
> AND COMPLETELY RELEASE AND FOREVER DISCHARGE . . .
> LENDER . . . AND AGENTS (INCLUDING, WITHOUT LIMITATION,
> CLMG CORP.), . . . OF AND FROM ANY AND ALL CLAIMS . . . AND
> CAUSES OF ACTION OF ANY AND EVERY NATURE . . . WHICH
> OBLIGORS, ET AL. NOW HAVE OR MAY CLAIM TO HAVE
> AGAINST LENDER, ET AL., OR ANY THEREOF, ARISING OUT OF,
> CONNECTED WITH OR RELATING TO ANY AND ALL ACTS,
> OMISSIONS OR EVENTS OCCURRING PRIOR TO THE EXECUTION
> OF THIS AGREEMENT.

[Doc. 36-3, p. 4-5, ¶ 5] The LMA states that the loan documents were the Sales Contract, the "Note, the Loan Agreement, the Mortgage, the Indemnity, the Guaranty and other documents executed/delivered in regard to the Loan." [Doc. 36-3, p. 1, ¶ C; p. 3, ¶ 3] The LMA contains an integration clause, stating, in part:

> THIS AGREEMENT AND THE OTHER DOCUMENTS ENTERED INTO
> IN REGARD TO THE LOAN REPRESENT THE FINAL AGREEMENT
> BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY
> EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT

4

ORAL AGREEMENTS OF THE PARTIES.   THERE ARE NO ORAL
AGREEMENTS BETWEEN THE PARTIES.

[Doc. 36-3, p. 6, ¶ 12] The LMA states that its purpose is to modify, but not replace the

original loan agreement, called the Construction Loan Agreement (CLA). [Doc. 36-3, p. 1,

¶ E] Plaintiff nonetheless alleges that the parties agreed that "to the extent the Loan

Documents included a due on sale clause, that clause did not apply to a conveyance of the

property made pursuant to the Sales Contract." [Doc. 36, ¶ 37] Moreover, Plaintiff alleges

that the Collateral Assignment executed with the LMA required Plaintiff to perform its

obligations under the Sales Contract unless LPP gave written consent to do otherwise.

[Doc. 36, ¶ 33]

From November 2011 through January 2012, after executing the LMA, Plaintiff

repeatedly requested from Defendants to be informed of the upcoming interest payment

amount.   [Doc. 36, ¶¶ 44, 46]   Defendants, however, did not inform Plaintiff of the

monthly interest payment due in January 2012 prior to informing Plaintiff that Plaintiff

defaulted by failing to make the monthly interest payment. [Id.]   Plaintiff could not

calculate the amount of interest due "[b]y virtue of the complicated nature of the variable

monthly interest computation under the Agreement, as well as the fact that Defendant LPP

continually added various 'costs' to the principal balance of the Note." [Doc. 36, ¶ 43]

In addition, Defendants' third party construction monitor did not timely approve

Plaintiff's first construction draw, causing Plaintiff to be unable to meet the construction

deadlines included in the Sales Contract. [Doc. 36, ¶¶ 40-42, 48] Nonetheless, Buyers and

Plaintiff agreed that the sale would go forward by the deadline and Plaintiff would continue to manage and coordinate the completion of their construction. [Doc. 36, ¶ 50, 51] Further, because the improvements were not complete, the Buyer could not refinance the property, and thus "Buyer and Plaintiff entered into a seller financing arrangement whereby a second mortgage, subordinate to LPP's mortgage, was recorded against the property." [Doc. 36, ¶ 52]   On January 5, 2012, the sale closed and Plaintiff conveyed the property to the Buyers' limited liability company, H&M Properties Rio Rancho, LLC. [Doc. 36, ¶ 53, 55]

On January 17, 2012, Defendants notified Plaintiff that it had defaulted on the Loan because it did not make the monthly payment due January 1, 2012 and because Plaintiff sold the property to an unrelated third party. [Doc. 36, ¶ 59] Over Plaintiff's objection, Defendants charged Plaintiff the default interest rate of eighteen percent from January 5, 2012, the date of the sale. [Doc. 36, ¶ 62] In the end, Plaintiff completed construction of the tenant improvements, the VA accepted the premises in April, and Plaintiff paid off the Loan in full on April 11, 2012. [Doc. 36, ¶ 73]   In the meantime, though, Defendant LPP charged Plaintiff the default interest rate for February, in the amount of $55,801.25, more than double the prior month's interest payment. [Doc. 36, ¶ 66] Further, "Defendants imposed upon Plaintiff exorbitant, unreasonable, and/or wrongful 'loan costs' and attorneys' fees in the amount of $25,509.05, far in excess of the cost contemplated or authorized by the Loan Documents" for items such as construction inspections that were either not conducted or incompetently conducted, attorneys' fees for the preparation of documents off commercially available forms and for the preparation of documents

Defendants elected not to use, and improperly charged travel costs. [Doc. 15, ¶ 69]

Plaintiff submits that Defendants charged it a total of $135,327.34 of wrongfully imposed interest and loan costs. [Doc. 36, ¶ 74] Additionally, Plaintiff pleads consequential damages in the amount of $48,333.32 in lost rent due to construction slowing and stopping because of Defendants' failure to timely pay the construction draw. [Doc. 36, ¶¶ 75, 76(a)] Plaintiff further pleads consequential damages of "[o]ngoing interest costs of 10% per annum on $200,000 from April 2012 to the present, which money Plaintiff had to borrow as a result of having to pay excessive loan costs, fees, and interest to Defendant LPP, and as a result of losing 2 months' rent." [Doc. 36, ¶ 76(b)]

Plaintiff sues under theories of breach of contract [Doc. 36, ¶¶ 77-79], breach of the implied covenant of good faith and fair dealing [Id. ¶¶ 80-89], estoppel [Id. ¶¶ 90-98], breach of fiduciary duty [Id. ¶¶ 99-103], unfair practices [Id. ¶¶ 104-110], tortious interference with contract (by Defendant CLMG) [Id. ¶¶ 111-116] and civil conspiracy [Id. ¶¶ 117-119].   In addition, Plaintiff seeks punitive damages. [Id. ¶¶ 79, 89, 98, 103, 116, 119]

## II.   RULE 12(b)(6) STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."   The sufficiency of a complaint is a question of law, and when addressing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and

draw all reasonable inferences in the plaintiff's favor.  *See Moore v. Guthrie*, 438 F.3d

1036, 1039 (10th Cir. 2006).   In order to withstand a Rule 12(b)(6) motion, a complaint

must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). If a plaintiff cannot nudge the claims "across the line from conceivable to

plausible," the complaint must be dismissed.  *Id.* at 680 (internal quotation marks and

citation omitted).

## III.   <u>ANALYSIS</u>

### A.   *Breach of Contract*

Defendants argue that Plaintiff's breach of contract claim was in fact released in the

November 15, 2011 Loan Modification Agreement.   The LMA contains a release (set out

more fully above), by which Plaintiff released Defendants from:   "ANY AND ALL

CLAIMS . . . ARISING OUT OF, CONNECTED WITH OR RELATING TO ANY AND

ALL ACTS, OMISSIONS OR EVENTS OCCURRING PRIOR TO THE EXECUTION

OF THIS AGREEMENT."   [Doc. 36-3, p. 4-5, ¶ 5]

Defendants argue that Plaintiff's claim for breach of contract is premised on the

alleged oral promise by CLMG's agent, pre-dating the LMA, to provide Plaintiff with

monthly statements.   [Doc. 24, p. 7]   However, the Complaint does not premise liability

solely on the oral promise pre-dating the LMA.   Plaintiff alleges that, after the date of the

LMA (and hence the release), the following occurred:

> 43.    By virtue of the complicated nature of the variable monthly interest computation under the Agreement, as well as the fact that Defendant LPP continually added various 'costs' to the principal balance of the Note upon which interest was computed, the amount of the required payment was uniquely within the knowledge of Defendants, thus making Plaintiff's payment of interest impossible unless and until the Defendants informed Plaintiff of the monthly payment amount.
>
> 44.    During the period from November 15, 2011 until late January of 2012, Plaintiff repeatedly informed Defendants that it was impossible for Plaintiff to determine the amount of interest due on any given month, and that it was therefore imperative that Defendants advise Plaintiff of the amount due, if Defendant wanted to receive payment.
>
> 45.    In response, Defendants repeatedly assured Plaintiff that they would timely inform Plaintiff of the amount of any upcoming interest payment.
>
> 46.    Despite Plaintiff's repeated requests, and the Defendants' repeated assurances as aforesaid, the Defendants failed to inform Plaintiff of the amount of the monthly interest payment due on January 1, 2012, until after Defendants had declared a default for failure to make that payment.

[Doc. 36] The Note provides for a variable interest rate and states: "Lender will tell Borrower the current index rate upon Borrower's request." [Doc. 12-2, p. 1] The LMA, which the parties agreed was to "modify, but not replace, the Note, . . . and the other Loan Documents" does not modify this provision. [Doc. 36-3, ¶¶ E]   Taking all these well-pleaded facts as true and granting Plaintiff all reasonable inferences from these facts, the Court concludes that Plaintiff has stated a claim for a breach of contract.   *See Lakeview Invs., Inc. v. Alamogordo Lake Vill., Inc.*, 520 P.2d 1096, 1099 (N.M. 1974) ("There can be no cause of action until there is a breach.").

Defendants argue that, even if they agreed to inform Plaintiff of the amount of interest payment due, Plaintiff cannot rely on this agreement which was outside of and

contradictory to the terms of the contract because of the LMA's integration clause.   [Doc. 26, pp. 16-17]   This Court is not persuaded.   The Note itself indicated that the lender would inform the borrower of the interest rate upon borrower's request.   [Doc. 12-2, p. 1] *See Sanders v. FedEx Ground Package Sys., Inc.*, 188 P.3d 1200, 1208 n.2 (N.M. 2008) (rejecting argument that an integration clause precluded the admission of evidence extrinsic to the contract to show the "circumstances under which the parties contracted"); *see also Empire W. Cos. v. Albuquerque Testing Labs., Inc.*, 800 P.2d 725, 729-30 (N.M. 1990) (upholding judgment on breach of contract claim based in part on extrinsic evidence as to meaning of term in contract).   Given this language, the Court is not persuaded at this time that, as a matter of law, the agreement to inform Plaintiff of the amount of interest payment due contradicts the LMA.

Defendants next argue that LPP had a contractual right to impose default interest based on two purported defaults by Plaintiff:   Plaintiff's failure to pay the monthly interest payment on January 1, 2012 and Plaintiff's transfer of the property without Defendants' consent. [Doc. 24, p. 15-16] Defendants submit that the Loan Modification Agreement required payment of interest payments on the first of each month.   [Doc. 24, p. 16] While Defendants may indeed have had a contractual right to charge the default interest rate, Plaintiff has plausibly pleaded that Defendants' actions (not informing Plaintiff of the amount due) made it impossible for Plaintiff to meet its obligations.   *See Nat'l Old Line Ins. Co. v. Brown*, 760 P.2d 775, 780 (N.M. 1988) ("He who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned; the

party thus prevented from discharging his part of the obligation is to be treated as though he had performed it." (internal asterisks, quotation marks, and citation omitted)).   Thus, the Court finds Defendants' argument, at this stage, unavailing.   The Court also concludes that Plaintiff has plausibly pleaded that Defendants' breached the contract by imposing the default interest rate based on the transfer of the property to H&M Properties, Rio Rancho, LLC.   [Doc. 36, ¶ 60; Doc. 36-6, p. 1]   As pleaded by Plaintiff, the Sales Contract, which was incorporated into the loan documents, expressly provided: "Buyer may assign this Agreement to the limited liability company in which Buyers are the sole members and managers and/or a qualified intermediary in conjunction with a Section 1031 Exchange." [Doc. 26-2, ¶ 26]   Given this language, the Court cannot conclude as a matter of law that Plaintiff breached the contract by selling the property to H&M Properties, Rio Rancho, and thus, Defendants' Motion to Dismiss the breach of contract claim must be denied.   *See C.R. Anthony Co. v. Loretto Mall Partners,* 817 P.2d 238, 243 (N.M. 1991) (holding that factual question exists where a contractual term is susceptible to reasonable but conflicting meanings).

### B.   *Breach of the Duty of Good Faith and Fair Dealing*

"New Mexico courts have held that every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract."   *Sanders,* 188 P.3d at 1203.   In order to state such a claim, Plaintiff must show "bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Id.* (internal quotation marks and citation omitted).   "The

11

covenant of good faith and fair dealing does not impose affirmative duties upon one party to protect another," *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.*, 858 P.2d 66, 82 (N.M. 1993), but does "require[] that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." *Bourgeous v. Horizon Healthcare Corp.*, 872 P.2d 852, 856 (N.M. 1994).

> Evasion of the spirit of the bargain and interference with or failure to cooperate in the other party's performance constitute bad faith and may violate the obligation of good faith in performance. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. . . . [I]t is one function of the good-faith performance doctrine to enforce the spirit of deals, including their unspecified inner logic. Indeed, it has even been said that it is the potential for a lack of clarity and completeness that necessitates the implication of the good faith covenant in every contract.

*Sanders*, 188 P.3d at 1203 (internal ellipses, brackets, quotation marks and citations omitted).

Plaintiff alleges that Defendants "prevented Plaintiff from making the interest payment" by refusing to tell Plaintiff the amount due, [Doc. 36, ¶¶ 46, 47] and then in bad faith declared Plaintiff to be in default of the Loan and charging Plaintiff the default interest rate. [Doc. 36, ¶ 63]  These allegations state a claim for violation of the duty of good faith and fair dealing, in that Plaintiff alleges that Defendants interfered with Plaintiff's performance of the contract and then used the contract against the Plaintiff.  *See id.*  Likewise, Plaintiff has stated a claim for breach of the duty of good faith and fair dealing by alleging that Defendants, on the one hand, required Plaintiff to comply with the

12

Sales Contract and then, on the other hand, declared Plaintiff in default for purportedly complying with the Sales Contract by selling the property to the Buyers' limited liability company.   [Doc. 36, ¶¶ 30, 59-60]   Accordingly, Defendants' Motion to Dismiss Plaintiff's claim for breach of the duty of good faith and fair dealing is denied.

### C.      Estoppel

"[E]stoppel is the preclusion, by acts or conduct, from asserting a right which might otherwise have existed, to the detriment and prejudice of another, who, in reliance on such acts and conduct, has acted thereon."   *Waters-Haskins v. New Mexico Human Servs. Dep't*, 210 P.3d 817, 822-23 (N.M. 2009) (internal quotation marks and citation omitted). As Plaintiff's "estoppel" argument relies upon purported waivers by Defendants, Plaintiff's Complaint alleges a theory under New Mexico law called "waiver by estoppel."[3]   [Doc. 26, pp. 12-14]

> [T]he following facts must be established to support a claim of waiver by estoppel: (1) the party to be estopped made a misleading representation by conduct; (2) the party claiming estoppel had an honest and reasonable belief based on the conduct that the party to be estopped would not assert a certain right under the contract; and (3) the party claiming estoppel acted in reliance on the conduct to its detriment or prejudice.

*Palenick v. City of Rio Rancho*, 306 P.3d 447, 451 (N.M. 2013) (internal quotation marks and citation omitted).

Defendants argue only that Plaintiff has not met its burden of alleging the first

---

[3] The Court acknowledges that there are other types of estoppel recognized under New Mexico law, including a more general equitable estoppel.   *See Lopez v. New Mexico*, 930 P.2d 146, 151 (N.M. 1996) (outlining the elements of equitable estoppel).

element of equitable estoppel - that Defendants made a misleading representation.   [Doc. 24, p. 12-14] However, the Complaint states two plausible misleading representations. First, Plaintiff alleges from November 15, 2011 through late January, 2012, Defendants allegedly made a misleading representation by repeatedly assured Plaintiff that they would inform Plaintiff of the amount of any upcoming interest payment. [Doc. 36, ¶ 45] Defendants did not do so, and instead declared Plaintiff in default on the same date that it told Plaintiff the amount of the interest payment. [Doc. 36, ¶¶ 46, 59, 97] Second, Defendants allegedly made a material misrepresentation by requiring Plaintiff to comply with the Sales Contract, which Plaintiff alleges caused Plaintiff to believe that Defendants had "waived the due on sale clause, or that the due on sale clause had been modified to be inapplicable to a transfer of title to the Buyer under the Sales Contract."   [Doc. 36, ¶¶ 94, 96]   Plaintiff has plausibly alleged waiver by estoppel as defined by New Mexico law, and Defendants' Motion to Dismiss Plaintiff's claim of estoppel is denied.

### D.    Breach of Fiduciary Duty

Defendants move to dismiss Plaintiff's claim for breach of fiduciary duty.   [Doc. 24, pp. 10-12]   Plaintiff concedes that New Mexico Courts have not found a fiduciary relationship under the facts of this case, and thus agrees to dismiss this claim.   [Doc. 26, pp. 15-16]   Accordingly, Plaintiff's claim for breach of fiduciary duty is dismissed.

### E.    Tortious Interference with Contractual Rights

Defendants move to dismiss Plaintiff's claim of tortious interference with contractual rights against Defendant CLMG.   [Doc. 24, pp. 17-19]   The elements of

14

tortious interference with contractual relations are: (1) CLMG had "knowledge of the contract" between LPP and Plaintiff; (2) "performance of the contract was refused;" (3) CLMG played an "active and substantial part" in causing Plaintiff to lose the benefits of the contract; (4) "damages flowed from the breached contract;" and (5) CLMG "induced the breach without justification or privilege to do so." *Bogle v. Summit Inv. Co.,* 107 P.3d 520, 528 (N.M. Ct. App. 2005) (internal quotation marks and citations omitted) (quoting *Ettenson v. Burke*, 17 P.3d 440, 448 (NM. Ct. App. 2001); *see also Wolf v. Perry,* 339 P.2d 679, 681-82 (N.M. 1959). In addition, Plaintiff must prove that Defendant CLMG "improperly interfered with the plaintiff's contractual relations, either through improper means or improper motive." *Diversey Corp. v. Chem-Source Corp.*, 965 P.2d 332, 339 (N.M. Ct. App. 1998).

Though lack of "privilege or justification" is listed as an element by both *Bogle* and *Ettenson*, *Ettenson* explains that it is the defendant's "burden to plead and prove privilege as an affirmative defense." *Ettenson*, 17 P.3d at 448. Thus, the Court is not persuaded by Defendants' first argument that the Court must dismiss this action because "Plaintiff failed to allege that CLMG[] received any benefit[,]" which is one way of establishing a corporate privilege. *See Bogle*, 107 P.3d at 528-29 (discussing various fact-based considerations in determining whether a corporate agent's interference with his or her employer's contract was privileged, including whether the agent benefited from the interference). [Doc. 24, p. 19]

Defendants further argue that Plaintiff did not allege that CLMG had an improper

motive or used improper means.  [Doc. 24, pp. 18-19]  Plaintiff asserts that "CLMG made repeated misrepresentations that it would inform Plaintiff of the amount of interest payments so that Plaintiff could pay them" and thus CLMG engaged in improper means to interfere with Plaintiff's agreement with LPP.  [Doc. 26, pp. 18-19]  New Mexico law recognizes "deceit or misrepresentation" as an improper means[4] with regard to the tort of interference with contractual relations. *M & M Rental Tools, Inc. v. Milchem, Inc.*, 612 P.2d 241, 246 (N.M. Ct. App. 1980) (internal quotation marks and citation omitted); *see also* Restatement (Second) of Torts, § 767, comment c (stating fraudulent misrepresentation is ordinarily a wrongful mean).  To establish fraudulent representation, a plaintiff must prove:  "(1) a representation of fact was made (either by commission or by omission) that was not true, (2) the defendant made the representation knowingly or recklessly, (3) the representation was made with the intent to induce the plaintiff to rely upon it, and (4) that the plaintiff relied on the representation."  *Encinias v. Whitener Law Firm, P.A.,* 310 P.3d 611, 620 (N.M. 2013); *see also Eoff v. Forrest*, 789 P.2d 1262, 1266 (N.M. 1990).  Plaintiff alleges that Defendant CLMG repeatedly assured Plaintiff that CLMG would tell Plaintiff the amount of interest due, and then advocated to Defendant LPP that Plaintiff was in default despite failing to inform Plaintiff of the amount of the

---

[4] New Mexico Courts have not specified whether fraudulent misrepresentation is required to show improper means, or whether negligent misrepresentation is sufficient.  *See M & M Rental Tools*, 612 P.2d at 246.  The Court concludes that Plaintiff's complaint states a claim for fraudulent misrepresentation, and thus the Court need not address whether allegations as to negligent misrepresentation are sufficient to allege improper means with regard to tortious interference with contractual relations in New Mexico.

interest payment due.  [Doc. 36, ¶ 115]  The Court concludes that these allegations satisfy Plaintiff's burden to plead facts which state a claim as to the improper means element of tortious interference with contractual relations.  Accordingly, Defendants' motion to dismiss Plaintiff's claim for tortious interference with contractual relations against Defendant CLMG is denied.

### F.    *Civil Conspiracy*

"To constitute an actionable civil conspiracy, there must be a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."  *Las Luminarias of the New Mexico Council of the Blind v. Isengard*, 587 P.2d 444, 447 (N.M. Ct. App. 1978).   Civil conspiracy is not actionable by itself—rather, it is dependent on a separate, unlawful act.  *Deflon*, 137 P.3d at 582. Defendants argue both that Plaintiff has not shown an independent cause of action and that Defendant CLMG is an agent of Defendant LPP, and accordingly "Plaintiff's claims for conspiracy between a corporation and its agent[] is a legal impossibility and must be dismissed as a matter of law."  [Doc. 24, p. 9]

New Mexico Courts have not concluded that civil conspiracy claims between a corporation and its agents are a "legal impossibility."  *Ettenson*, 17 P.3d at 447 ("We agree with Ettenson that his civil conspiracy claim rests on a valid, underlying cause of action-[the CEO's] tortious interference with Ettenson's contract with [the corporation]-or which, if proven, [the CEO] can be held liable individually along with the other members of the alleged conspiracy."); *see also Deflon*, 137 P.3d at 581-82 (adopting the *Ettenson*

17

analysis).   Accordingly, the Court is not persuaded by this argument.   Likewise, as the

Court has held that Plaintiff has stated a cause of action for, among other things, tortious

interference with contract, Plaintiff's claim for civil conspiracy survives.   Defendants'

Motion to Dismiss Plaintiff's conspiracy claim is denied.

### G.   New Mexico Unfair Practices Act

Plaintiff alleges that Defendants violated the New Mexico Unfair Practices Act,

NMSA 1978, §§ 57-12-1 to 57-12-26 (NMUPA), in two ways.   First, Plaintiff alleges

Defendants violated Section 57-12-2(D)(14) by:

> using ambiguity as to material facts, and/or by failing to state material facts,
> which material facts include but are not limited to (a) Defendants' intention,
> and belief that they had the right, to declare a default and impose a default
> interest rate for non-payment of interest, even when such non-payment was
> due to Defendants' own misconduct in failing to inform Plaintiff of the
> amount of interest due; (b) Defendants' intention, and belief that they had the
> right, to declare a default under the due on sale clause and impose a default
> interest rate, based upon a conveyance by Plaintiff of the property that was
> mandated by the Loan Documents; and (c) Defendants' intention, and belief
> that they had the right, to impose upon Plaintiff unreasonable and exorbitant
> loan costs.

[Doc. 36, ¶¶ 106, 108]   *See* Section 57-12-2(D)(14) (stating an unfair or deceptive trade

practice includes "using exaggeration, innuendo or ambiguity as to a material fact or

failing to state a material fact if doing so deceives or tends to deceive").   Second, Plaintiff

alleges that Defendants violated Section 57-12-2(D)(15) by:

> Stat[ing] to Plaintiff that the Agreement involved rights, remedies, or
> obligations that it did not involve, including but not limited to (a) the right of
> Plaintiff to be informed of the amount of each monthly interest payment due;
> (b) the right to transfer the Property pursuant to the Sales Contract, without
> having a default declared under the due on sale clause; (c) the obligation to

pay the default interest rate based upon an alleged default for failure to make an interest payment, when that failure was caused by Defendants' failure and refusal to inform Plaintiff of the amount due, which amount was uniquely within the knowledge of Defendants; and (d) the obligation to pay the default interest rate based upon an alleged default under the due on sale clause for making a conveyance authorized and required by the Sales Contract.

[Doc. 36, ¶¶ 107, 108]   *See* Section 57-12-2(D)(15) (stating an unfair or deceptive trade practice includes "stating that a transaction involves rights, remedies or obligations that it does not involve").

To state a claim under the NMUPA, a plaintiff must allege:

First, . . . the party charged made an oral or written statement, . . . that was either false or misleading. Second, the false or misleading representation must have been knowingly made . . . in the extension of credit or collection of debts.  Third, the conduct complained of must have occurred in the regular course of the representer's trade or commerce.  Fourth, the representation must have been of the type that may, tends to or does, deceive or mislead any person.

*Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (N.M. 1991) (internal quotation marks, citations and ellipses omitted).

Defendants argue only that they made no misrepresentation to Plaintiff.  [Doc. 24, pp. 14-15]  Given the integration clause in the LMA, Defendants argue, Plaintiff cannot rely on any oral statements that they would let Plaintiff know the amount of the interest payment due.  [Id.]  However, Plaintiff alleges that the misrepresentation was that Plaintiff was in default.  [Doc. 36, ¶¶ 106, 107]  The Court is persuaded that Plaintiff has stated a claim that Defendants misrepresented to Plaintiff that Plaintiff was in default under the circumstances of this case.  *Cf. Billsie v. Brooksbank*, 525 F.Supp.2d 1290, 1295

19

(D.N.M. 2007) (holding that genuine issue of material fact existed on claim under NMUPA where attorney, in collecting a bill, listed two social security numbers for the debtor on a wage garnishment application filed with the court).   As pleaded, Plaintiff may be able to prove that it was not in default under the loan, with regard to either the sale of the property to H&M Properties Rio Rancho, LLC, or the late interest payment, and thus the representation that Plaintiff was in default was a misrepresentation in the collection of a debt.   As such, the Court will not dismiss Plaintiff's claim for violation of the NMUPA.

## IV.    CONCLUSION

The Court finds that oral argument on the motion before the Court will not be of assistance to the Court.   For the reasons set forth above, Defendant's Motion to Dismiss [Doc. 24] Plaintiff's claim for breach of a fiduciary duty, Count IV of Plaintiff's *Second Amended Complaint for Damages*, is **HEREBY GRANTED**.   [Doc. 36, ¶¶ 99-103] Further, for the reasons set forth above, Defendants' Motion to Dismiss [Doc. 24] all other Counts alleged in Plaintiff's *Second Amended Complaint for Damages* is **HEREBY DENIED**.

**SO ORDERED** this 19th day of May, 2014 in Albuquerque, New Mexico.


_____
M. Christina Armijo
Chief Judge, United States District Court